Filed 12/10/25  P. v. Magana-Torres CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C101339 |
| Plaintiff and Respondent, | (Super. Ct. No. 62-044017B) |
| v. | |
| JOSE HUMBERTO MAGANA-TORRES, | |
| Defendant and Appellant. | |

In 2007, a jury found defendant Jose Humberto Magana-Torres guilty of two counts of attempted murder and two counts of conspiracy to commit murder along with a host of other crimes in connection with his participation in a home invasion robbery.  The trial court sentenced him to 62 years to life in state prison.  Magana-Torres appeals the denial of his 2022 petition for resentencing under Penal Code section 1172.6 at the prima facie stage.  Magana-Torres argues the trial court did not advise the jury that the natural and probable consequences doctrine did not apply to attempted murder and thus the jury could have convicted him of attempted murder under that theory.  He also argues the jury

1

could have used a portion of the trial court's conspiracy instructions for the same purpose. We will affirm the order denying the petition.

BACKGROUND

The amended information charged Magana-Torres and his two codefendants with three counts of auto theft (Veh. Code, § 10851, subd. (a)), conspiracy to commit robbery (Pen. Code, §§ 182, 211, subd. (a)(1)),[1] burglary (§ 459), two counts of home invasion robbery in concert (§§ 211, 213, subd. (a)(1)(A)), theft from an elder (§ 368, subd. (d)), two counts of false imprisonment (§ 236), false imprisonment of an elder (§ 368, subd. (f)), assault with a deadly weapon (§ 245, subd. (a)(1)), two counts of conspiracy to commit murder (§§ 182, subd. (a)(1), 187), two counts of attempted premeditated murder (§§ 664, 187, subd. (a)), arson causing great bodily injury (§ 451, subd. (a)), causing injury to an elder (§ 368, subd. (b)(1)), and three counts of receiving stolen property (§ 496, subd. (a)). It also alleged several enhancements and multiple circumstances in aggravation not relevant to our disposition of this case.

The underlying facts are recited in our unpublished decision in *People v. Gomez-Perez et al.* (Mar. 27, 2009, C056219) (*Gomez-Perez*).[2] Although we do not rely on the factual summary in *Gomez-Perez* to conduct our review, we recount some background facts to provide context.

Early one morning in June 2004, three men with their faces covered entered the victims' bedroom. One of the men ordered the victims to lie face down on the bed, keep still, and tell the men where the money was. The robbers tied the two victims by their wrists and ankles and ransacked the home.

---

[1]     Further undesignated statutory references are to the Penal Code.

[2]     We construe the People's request for judicial notice as a request to incorporate by reference the record and opinion in case No. C056219 and grant it.

2

After the noises from the robbers ceased, one of the victims got up from the bed. He tripped, fell, and lost consciousness. The other victim untied herself, escaped, and called 911. Police and firefighters rescued the man.

During the investigation, firefighters discovered several small fires had been set throughout the house and the knobs on the gas stove had been turned to the "on" position.

At trial, the trial court instructed the jury on attempted murder using CALCRIM No. 600, stating in relevant part: "The defendants are charged in Counts Fourteen and Fifteen with attempted murder. [¶] To prove that a defendant is guilty of attempted murder, the People must prove that: [¶] 1. The defendant took direct but ineffective steps toward killing another person; [¶] AND [¶] 2. The defendant intended to kill that person. [¶] . . . [¶] To convict an aider and abettor of attempted murder[,] the aider and abettor must share the perpetrator's specific intent to kill." Nowhere in this instruction did the trial court refer to or reference the conspiracy or natural and probable consequences instructions.

The trial court did instruct the jury on the concept of natural and probable consequences, but not on any of the counts alleging attempted murder or conspiracy to commit murder. In instructing on the natural and probably consequences, the court used CALCRIM No. 402: "Under certain circumstances, a person who is guilty of one crime may also be guilty of other crimes that were committed at the same time. [¶] In this case the defendants are charged in count 3 with conspiracy to commit robbery and counts 5 and 6 with home invasion robbery in concert against [the victims.] For the purposes of this instruction these crimes and any lesser included offense of those crimes, will be referred to as 'target offenses.' [¶] The defendants are also charged in count 4 with the crime of first degree residential burglary, count 7 with theft from an elder adult, counts 8 and 9 with false imprisonment by violence, in count 10 with false imprisonment of an elder, in count 11 with assault with a deadly weapon, in count 17 with causing injury or pain to an elder adult, and in count 18 with the unlawful driving or taking of [the

3

victims'] vehicle. For the purpose of this instruction these crimes and any lesser included offenses to these crimes will be referred to as 'non target offenses[.]'

"You must first decide whether a defendant is guilty of any target offense. If you find the defendant is guilty of any target offense, you must then decide whether he is guilty of any charged non target offenses. [¶] To prove that a defendant is guilty of any non target offenses, the People must prove that: [¶] 1. The defendant is guilty of a target offense; [¶] 2. During the commission of a target offense a non target offense was committed; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the non target offense, or one of [its] lesser included offenses, was a natural and probable consequence of the commission of a target offense."

The court separately provided the jury with instructions as to the elements the jury needed to find to determine if the defendant was guilty of conspiracy to commit robbery (CALCRIM No. 415) and conspiracy to commit murder (CALCRIM No. 563). For the robbery conspiracy count (specifically identified as "Count Three"), the trial court instructed the jury the People needed to prove: (a) The defendant intended to and did agree with the conspirators to commit robbery; (b) at the time of the agreement the defendant and one or more of the conspirators intended that one or more of them would commit robbery; and (c) that the conspirators committed one of a number of specific overt acts in California.

On the subject of conspiracies generally, the trial court instructed the jury using CALCRIM No. 417 that, "[a] member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or design of the conspiracy. This rule applies even if the act was not intended as part of the original plan. Under this rule, a defendant who is a member of the conspiracy does not need to be present at the time of the act." In this same instruction, the court instructed the jury that

4

in order to prove that the defendant was guilty of the enumerated counts of burglary, home invasion robbery, theft from an elder adult, false imprisonment, false imprisonment of an elder adult, assault with a deadly weapon, causing injury, pain or suffering to an elder adult, unlawful taking or driving a vehicle, or any of the lesser offenses (collectively the enumerated crimes), the People had to prove the defendant conspired to commit the crime of robbery, one of the members of the conspiracy committed one of the enumerated crimes, and the enumerated crimes were the natural and probable consequences of the common plan or design of the crime that the defendant conspired to commit. Each of the enumerated crimes to which this instruction applied was also identified by count from the indictment. Notably, none of the enumerated crimes included attempted murder or conspiracy to commit murder or their respective count numbers.

For the conspiracy to commit murder counts, (identified as counts twelve & thirteen), using CALCRIM No. 563, the trial court instructed the jury, "The defendants are charged in Counts Twelve and Thirteen with conspiracy to commit murder of [the victims.] [¶] To prove that a defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant intended to agree and did agree with [the other alleged coconspirators] to intentionally and unlawfully kill; [¶] 2. At the time of the agreement, the defendant and one or more of the other alleged members of the conspiracy intended that one or more of them would intentionally and unlawfully kill; [¶] 3. At the time of the agreement the defendant had a state of mind called malice aforethought. A defendant acted with *malice aforethought* if he unlawfully intended to kill[;] [¶] 4. At the time of the agreement, the defendant acted willfully, deliberately and with premeditation. . . . [¶] . . . [¶] 5. [One of the conspirators] committed one of the following overt acts alleged to accomplish the murder of [the victims]."

The lists of overt acts for both conspiracy charges overlapped by identifying the acts of tying up the victims and stealing the victims' car. The instructions diverged,

5

however, as to overt acts relating to hitting the victim, covering the window, and stealing items (for the robbery conspiracy); and the acts of obtaining lighters, setting fires, and leaving the stove burners on (for murder).

As to both attempted murder and conspiracy to commit murder, the trial court further instructed the jury with CALCRIM No. 520 on the requisite mental state: "To find the defendants guilty of attempted murder or conspiracy to commit murder the People must prove that the defendant had a state of mind called malice aforethought. Malice aforethought is defined as acting with intent to unlawfully kill. [¶] Malice aforethought does not require hatred or ill will toward the victim. It is a mental state that must be formed before the act that causes death is committed. It does not require deliberation or the passage of any particular period of time."

The jury convicted Magana-Torres on all counts submitted to it and found all of the enhancements and aggravating circumstances true. The trial court sentenced Magana-Torres to 62 years to life in prison. A separate panel of this court affirmed this judgment in March 2009. (*Gomez-Perez, supra*, C056219.)

In 2022, Magana-Torres filed a motion for resentencing under section 1172.6. The trial court appointed counsel for Magana-Torres, received briefing from the parties, and held a hearing. In opposition to the petition, the People submitted the jury verdicts for attempted murder and conspiracy to commit murder and the relevant jury instructions given at trial.

The trial court denied the petition by written order, finding that the challenged instructions did not permit the jury to convict Magana-Torres of attempted murder under the natural and probable consequences doctrine. The trial court noted Magana-Torres parsed the language of the conspiracy instruction CALCRIM No. 417 (which the trial court miscited as CALCRIM No. 415) but found Magana-Torres's argument required it to sever that portion of the instruction from the instruction as a whole, which the court would not do. Construing the instructions as a whole, the court found no ambiguity or

6

reasonable likelihood "the jury would have interpreted the [conspiracy] instruction to permit an attempted murder conviction under the natural and probable consequences doctrine." This was because that instruction only applied to the enumerated crimes identified in the instruction, which notably did not include attempted murder. The same reasoning applied to the natural and probable consequences instruction, which also did not include attempted murder.

Magana-Torres filed a timely notice of appeal.

DISCUSSION

Magana-Torres argues the trial court's failure to advise the jury that the natural and probable consequences doctrine did not apply to attempted murder means the jury could have convicted him of attempted murder under that theory and thus the trial court here erred in denying his petition at the prima facie stage. He also argues the jury could have used a portion of the trial court's conspiracy instructions to the same effect. We disagree.

The enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) (Stats. 2018, ch. 1015) "altered the substantive law of murder in two areas." (*People v. Curiel* (2023) 15 Cal.5th 433, 448.) First, it narrowed the application of the felony-murder rule. (*Ibid.*; § 189, subd. (e).) Second, it imposed a new requirement that, except in cases of felony murder, " 'a principal in a crime shall act with malice aforethought' " to be convicted of murder. (*Curiel*, at p. 449, quoting § 188, subd. (a)(3).) "Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

With Senate Bill No. 775 (2021-2022 Reg. Sess.), the Legislature expanded the scope of Senate Bill No. 1437 to include those convicted of attempted murder and manslaughter. (Stats. 2021, ch. 551, § 2.) As relevant here, section 1172.6, subdivision (a) now provides: "A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the

7

petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) the [charging document] . . . allowed the prosecution to proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine. [¶] (2) the petitioner was convicted of . . . attempted murder . . . following a trial . . . . [¶] (3) The petitioner could not presently be convicted of . . . attempted murder because of changes to section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

Section 1172.6 requires the trial court to make a prima facie determination as to whether a defendant is eligible for relief. (§ 1172.6, subd. (c).) At the prima facie stage, the court may consider the petition and "the record of conviction in determining whether that single prima facie showing is made." (*People v. Lewis* (2021) 11 Cal.5th 952, 970.) The threshold for such a showing is very low, so in reviewing the record of conviction and any appellate opinions, the trial court should take the petition's allegations as true and refrain from engaging in factfinding, weighing evidence, or exercising discretion. (*Id.* at pp. 971-972.) The "authority to make determinations without conducting an evidentiary hearing pursuant to section [1172.6], subd[ivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980, disapproved on other grounds in *Lewis*, at p. 963.) "We review de novo an order denying a section 1172.6 petition at the prima facie review stage." (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170.)

Section 1172.6, by its terms, applies only to attempted murders "under the natural and probable consequences doctrine." (§ 1172.6, subd. (a).) Here, as Magana-Torres concedes, the trial court did not instruct Magana-Torres's jury that it could find him guilty of attempted murder under the natural and probable consequences doctrine.

8

Rather, the trial court properly instructed the jury that to convict Magana-Torres of attempted murder the People had to prove Magana-Torres intended to kill his victims. The attempted murder instruction thus establishes that Magana-Torres is ineligible for resentencing relief. (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 [affirming denial of resentencing petition where jury not instructed on natural and probable consequences theory of attempted murder].)

Magana-Torres challenges this conclusion by arguing the jury "may have relied on the [natural and probable consequences] theory" as an avenue to find Magana-Torres guilty of attempted murder because these instructions did not inform the jury that they did not apply to attempted murder and based on the general language of the conspiracy instruction that states a member of the conspiracy is criminally responsible for acts committed by any member of the conspiracy. We disagree.

The jury instruction concerning the natural and probable consequences doctrine and the jury instruction on the conspiracy theories specifically identified the enumerated crimes to which they applied by both the count number contained in the indictment and the particular Penal or Vehicle Code section to which those theories applied. Attempted murder was not among these enumerated crimes in either jury instruction. Considering the instructions as a whole, the jury could not draw the conclusion that these instructions that *explicitly* applied to the enumerated counts and crimes, could somehow have applied to the two counts of attempted murder charged in counts fourteen and fifteen that were *not* expressly mentioned in these instructions. We presume jurors are "able to understand and correlate instructions and . . . have followed the court's instructions." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852) Despite Magana-Torres's vague argument to the contrary, the similarity of some of the overt acts contained in the conspiracy to commit robbery count and the conspiracy to commit murder count adds nothing to the determination of the required mental state necessary for the jury to find Magana-Torres guilty of attempted murder.

9

In short, nothing in the record suggests the jury misunderstood the instructions on attempted murder in a way that would have allowed it to apply the natural and probable consequences doctrine or impute malice under the conspiracy theory. To the contrary, the record of conviction conclusively establishes that Magana-Torres was not "convicted of . . . attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a).) He is therefore ineligible for resentencing relief.

## DISPOSITION

The order denying the petition is affirmed.


_____/s/_____
EARL, P. J.


We concur:


_____/s/_____
KRAUSE, J.


_____/s/_____
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.